UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GEORGE CANNAROZZO,                          :
                                            :
            Plaintiff,                      :        CIVIL ACTION NO. 3:18-CV-267
                                            :
      v.                                    :        (JUDGE MARIANI)
                                            :        (Magistrate Judge Carlson)
BOROUGH OF WEST HAZLETON and                :
DIANE PANZARELLA,                           :
                                            :
            Defendants.                     :
                                            :

## MEMORANDUM OPINION
## I. INTRODUCTION

Presently before the Court is a Report and Recommendation ("R&R") (Doc. 24) by

Magistrate Judge Martin C. Carlson, in which he recommends that the Motion of

Defendants, Borough of West Hazleton and Diane Panzarella, to Dismiss Plaintiff's

Complaint (Doc. 13) be granted. Plaintiff filed objections to the R&R (Doc. 25) and

Defendants filed a response to the objections (Doc. 27). For the reasons discussed below,

the Court will not adopt the R&R and will deny Defendants' motion.

## II. STANDARD OF REVIEW

A District Court may "designate a magistrate judge to conduct hearings, including

evidentiary hearings, and to submit to a judge of the court proposed findings of fact and

recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C.

§ 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's

Report and Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id*. at § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3); M.D. Pa. Local Rule 72.3; *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). "If a party does not object timely to a magistrate judge's report and recommendation, the party may lose its right to *de novo* review by the district court." *EEOC v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017). However, "because a district court must take some action for a report and recommendation to become a final order and because the authority and the responsibility to make an informed, final determination remains with the judge, even absent objections to the report and recommendation, a district court should afford some level of review to dispositive legal issues raised by the report." *Id*. at 100 (internal citations and quotation marks omitted).

### III. BACKGROUND

Plaintiff filed his Complaint pursuant to 42 U.S.C. § 1983. (Doc. 1 ¶ 5.) Although he did not specifically identify the legal basis for the action in his Complaint, in his brief opposing Defendants' motion, Plaintiff states that "the federally protected right violated in this case by Defendants is Mr. Cannarozzo's right to be free from unreasonable searches and seizures under the Fourth Amendment." (Doc. 16 at 10 (citing Doc. 1 ¶¶ 31-36, 48-49, 78-80).) With this clarification, the Court will set out facts contained in the Complaint relevant to the claimed Fourth Amendment violations by Defendant Panzarella and Defendant Borough of West Hazleton.

Plaintiff alleges that, on February 6, 2016, a fire occurred at a five-unity rental property which he owns at 10-12 East Oak Street in West Hazleton, Pennsylvania. (Doc. 1 ¶¶ 7, 17.) The property is considered to be a commercial property. (*Id.* ¶ 9.) The West Hazleton Fire Department responded to the report of the fire which was due to a tenant cooking with grease in the tenant's unit. (*Id.* ¶ 16.) After responding to the first report of fire, the West Hazleton Fire Department again went to 10-12 East Oak Street on February 6, 2016. (*Id.* ¶ 18.)

At the time of the fire, Defendant Diane Panzarella was employed by the Borough of West Hazleton as a Code Enforcement Officer and Building Code Official. (*Id.* ¶ 3.) She was not qualified to inspect commercial properties in the Borough of West Hazleton. (*Id.* ¶ 10.) In February 2016, Carl Faust was employed by the Borough of West Hazleton as a commercial building inspector. (*Id.* ¶ 11.)

Due to the fire department responses on February 6, 2016, Defendant Panzarella went to the scene. (*Id.* ¶ 19.) She called Mr. Faust and asked him to come to the property because there was a fire in the building. (*Id.* ¶¶ 20, 30.) She also sent him a picture of electrical wiring. (*Id.* ¶ 30.) He arrived approximately forty-five minutes after receiving the call. (*Id.* ¶ 21.) When Mr. Faust arrived, there was no active fire but the fire company was still there. (*Id.* ¶ 22.)

Before Mr. Faust had arrived, the police and/or the fire department had gained access to the basement of the property and determined that there was no fire in the basement. (*Id.* ¶ 29.)

Mr. Faust has opined that certain things he found on the property on February 6, 2016, were safety or fire hazards. (*Id.* ¶ 26.) He testified that photographs taken at the time did not have anything to do with the fire that was sparked and the stove that was removed by the fire department. (*Id.* ¶ 28.)

Plaintiff did not consent to a code inspection of the basement and no warrant was obtained. (*Id.* ¶ 31, 34, 35, 48.) The property was condemned by the Borough of West Hazleton as a result of the search. (*Id.* ¶ 37.)

The enunciated policy of the Borough of West Hazleton is that code officials may conduct a search of property at any time if requested by police or fire officials if the police or fire officials deem that a hazard exists. (*Id.* ¶ 69.) Mr. Faust has testified that,

> under the Building Code in the State of Pennsylvania, Borough officials have the right to inspect and go into a building as long as either the fire company or police department is there and if we believe that there are violations or life threatening problems that would cause a fire or can be hazardous to the property or anybody living in the property.

(*Id.* ¶ 72.) He also testified that Borough officials have the right to go and look at a building with the accompaniment of fire department or police department personnel if it is declared that a hazard exists. (*Id.* ¶ 73.)

Plaintiff asserts that if Defendant Panzarella and Mr. Faust believe they have the right to inspect and go into a building if "either the fire company or police department is present, and if it is believed that there are violations or life threatening problems in such building, without obtaining a proper warrant, then such conduct is based on inadequate training of such code officials provided by the Borough of West Hazleton." (*Id.* ¶ 74.)

## IV. ANALYSIS

With the pending motion, Defendants maintain that Plaintiff's Fourth Amendment claims fail. First, Defendants contend that the search was reasonable under the Fourth Amendment because it was conducted pursuant to an emergency. (Doc. 13 at 21-28.) Second, they assert that Defendant Panzarella is entitled to qualified immunity because her alleged actions "were not so egregious that 'every' reasonable official would have known it was constitutionally prohibited." (*Id.* at 29-30 (citing *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)).) Third, regarding Plaintiff's claims for municipal liability against Defendant Borough of West Hazelton, Defendants argue Plaintiff has not shown the existence of an alleged policy that code officials may conduct a search of property if requested by police or fire officials or an alleged lack of training for code enforcement officials. (*Id.* at 31.)

Magistrate Judge Carlson concluded Defendant Panzarella was entitled to qualified immunity, finding that, given the facts alleged by Plaintiff, "it cannot be said that the plaintiff's right to require that the defendants obtain a search warrant before they completed

5

a fire safety inspection was clearly established." (Doc. 24 at 24.) He also determined that Plaintiff's Complaint did not state a claim for municipal liability under *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978). (Doc. 24 at 28.) Therefore, Magistrate Judge Carlson concluded that Defendants' motion to dismiss (Doc. 13) should be granted. (Doc. 24 at 29.)

Plaintiff lodges fifteen objections to the R&R. (Doc. 25.) Aside from his general objection to Magistrate Judge Carlson's conclusion that Defendants' motion should be granted (*id.* at 6), Plaintiff's objections fall into three categories: objections to the qualified immunity analysis and conclusion; objections to the exigent circumstances determination; and objections to the municipal liability determination. (*Id.* at 7-12.)

## A. Qualified Immunity

Plaintiff alleges that the Magistrate Judge's qualified immunity determination was in error because Plaintiff's allegations regarding Defendant Panzarella's "clear animus" toward him, the numerous citations she issued following the warrantless search, and the private criminal complaint she brought against him after the search show her bad faith and bad intent as to Plaintiff and support the contention that she "was knowingly violating the law when she conducted the warrantless search on February 6, 2018." (Doc. 25 at 7-8.) For reasons discussed below, Defendant Panzarella's subjective intent is not relevant to the determination of whether she is entitled to qualified immunity regarding Plaintiff's Fourth Amendment claim. However, on a broader scale, the Court reads Plaintiff's objection to the

6

qualified immunity recommendation and his assertion that discovery is needed to make a

proper determination on the issue to present questions regarding the objective

reasonableness of Defendant Panzarella's actions. (*See* Doc. 25 at 8.) Therefore, the

Court will undertake *de novo* review of the qualified immunity issue.

This Court has summarized the doctrine of qualified immunity as follows:

> Government officials performing "discretionary functions," are insulated from
> suit if their conduct did not violate a "clearly established statutory or
> constitutional right[ ] of which a reasonable person would have known." *Wilson
> v. Layne*, 526 U.S. 603, 609 (1999); *see also Pearson v. Callahan*, 555 U.S.
> 223, 231 (2009). This doctrine, known as qualified immunity, provides officials
> performing discretionary functions not only defense to liability, but also
> "immunity from suit." *Crouse v. S. Lebanon Twp.*, 668 F. Supp. 2d 664, 671
> (M.D. Pa. 2009) (Conner, J.) (citations omitted). Qualified immunity balances
> two important interests – the need to hold public officials accountable when
> they exercise power irresponsibly and the need to shield officials from
> harassment, distraction, and liability when they perform their duties reasonably.
> The protection of qualified immunity applies regardless of whether the
> government official's error is "a mistake of law, a mistake of fact, or a mistake
> based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231.
>
> Determinations regarding qualified immunity, and its application in a
> given case, require a court to undertake two distinct inquiries. First, the court
> must evaluate whether the defendant violated a constitutional right. *Saucier v.
> Katz*, 533 U.S. 194, 201-02 (2001), *abrogated in part by Pearson*, 555 U.S.
> 223. If the defendant did not actually commit a constitutional violation, then the
> court must find in the defendant's favor. *Saucier*, 533 U.S. at 201. If the
> defendant is found to have committed a constitutional violation, the court must
> undertake a second, related inquiry to assess whether the constitutional right
> in question was "clearly established" at the time the defendant acted. *Pearson*,
> 555 U.S. at 816; *Saucier*, 533 U.S. at 201-02. The Supreme Court of the United
> States has instructed that a right is clearly established for purposes of qualified
> immunity if a reasonable state actor under the circumstances would understand
> that his or her conduct violates that constitutional right. *Williams v. Bitner*, 455
> F.3d 186, 191 (3d Cir. 2006) (citing *Saucier*, 533 U.S. at 202).

*Bomba v. Dep't of Corr.*, No. 3:16-CV-1450, 2018 WL 7019254, at *7–8 (M.D. Pa. Sept. 4,

2018), *report and recommendation adopted in part, rejected in part sub nom. Bomba v.*

*Commonwealth of Pennsylvania Dep't of Corr.*, No. 3:16-CV-01450, 2019 WL 177471 (M.D.

Pa. Jan. 11, 2019). In this legal construct, the objective reasonableness of the defendant's

conduct rather than the defendant's subjective intent is relevant to the determination of

whether the doctrine applies. *Harlowe v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Pearson*

*v. Callahan*, 555 U.S. 223 (2009), the Supreme Court clarified that the procedure set out in

*Saucier* is often appropriate, but was no longer mandatory: "The judges of the district courts

and the courts of appeals should be permitted to exercise their sound discretion in deciding

which of the two prongs of the qualified immunity analysis should be addressed first in light

of the circumstances in the particular case at hand." *Id.* at 236.

In *Kane v. Barger*, 902 F.3d 185 (3d Cir. 2018), the Circuit Court distilled from

Supreme Court precedent the following principles for determining when a constitutional right

may be deemed clearly established:

A clearly established right is one that is sufficiently clear that every reasonable
official would have understood that what he is doing violates that right. We do
not require a case directly on point to find that a right was clearly established.
Rather, to be clearly established, a right need only have a sufficiently clear
foundation in then-existing precedent. In this inquiry, we look first to applicable
Supreme Court precedent. However, even if none exists, it may be possible
that a robust consensus of cases of persuasive authority in the Courts of
Appeals could clearly establish a right for purposes of qualified immunity.

Defining the right at issue is critical to this inquiry, and we must frame
the right in light of the specific context of the case, not as a broad general
proposition. This does not mean that an official action is protected by qualified

8

immunity unless the very action in question has previously been held unlawful. Accordingly, it need not be the case that the exact conduct has previously been held unlawful so long as the contours of the right are sufficiently clear. Said another way, we do not require a case directly mirroring the facts at hand, so long as there are sufficiently analogous cases that should have placed a reasonable official on notice that his actions were unlawful. As such, officials can still be on notice that their conduct violates established law even in novel factual circumstances.

902 F.3d at 194-195 (internal quotations and citations omitted).

Here Plaintiff contends that Defendant Panzarella's actions constituted an unreasonable search under the Fourth Amendment. (Doc. 16 at 12.) Defendants seek dismissal of the Fourth Amendment claim against Defendant Panzarella on alternative grounds: Defendant Panzarella's search was reasonable and did not violate the Fourth Amendment because it was conducted pursuant to an emergency (Doc. 13 at 21-28); and, if the Court finds that Plaintiff has sufficiently pled a Fourth Amendment claim, Defendant Panzarella is entitled to qualified immunity because every reasonable official would not have known the search was constitutionally prohibited (id. at 28-30).

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "The Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government," without regard to whether the government actor is investigating crime or performing another function. City of Ontario, Cal. v. Quon, 560 U.S. 746, 755–56 (2010) (quoting Skinner v. Railway Labor Executives' Assn., 489 U.S. 602, 613–614 (1989)).

9

In *Camara v. Municipal Court of the City and County of San Francisco*, 387 U.S. 523

(1967), the Court considered the propriety of administrative searches conducted without a

warrant.

> Though there has been general agreement as to the fundamental purpose of
> the Fourth Amendment, translation of the abstract prohibition against
> 'unreasonable searches and seizures' into workable guidelines for the decision
> of particular cases is a difficult task which has for many years divided the
> members of this Court. Nevertheless, one governing principle, justified by
> history and by current experience, has consistently been followed: except in
> certain carefully defined classes of cases, a search of private property without
> proper consent is 'unreasonable' unless it has been authorized by a valid
> search warrant. *See, e.g., Stoner v. State of California*, 376 U.S. 483, 84 S.Ct.
> 889, 11 L.Ed.2d 856; *United States v. Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 96
> L.Ed. 59; *McDonald v. United States*, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153;
> *Agnello v. United States*, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145. As the Court
> explained in *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92
> L.Ed. 436:
>
>> 'The right of officers to thrust themselves into a home is also a
>> grave concern, not only to the individual but to a society which
>> chooses to dwell in reasonable security and freedom from
>> surveillance. When the right of privacy must reasonably yield to
>> the right of search is, as a rule, to be decided by a judicial officer,
>> not by a policeman or government enforcement agent.'

387 U.S. at 528–29. The Court held that administrative searches conducted pursuant to

administrative code inspection programs "are significant intrusions upon the interests

protected by the Fourth Amendment, that such searches when authorized and conducted

without a warrant procedure lack the traditional safeguards which the Fourth Amendment

guarantees to the individual." *Id.* at 534. The Court qualified its holding as follows:

> [s]ince our holding emphasizes the controlling standard of reasonableness,
> nothing we say today is intended to foreclose prompt inspections, even without

a warrant, that the law has traditionally upheld in emergency situations. *See North American Cold Storage Co. v. City of Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (seizure of unwholesome food); *Jacobson v. Commonwealth of Massachusetts,* 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (compulsory smallpox vaccination); *Compagnie Francaise de Navigation a Vapeur v. Louisiana State Board of Health,* 186 U.S. 380, 22 S.Ct. 811, 46 L.Ed. 1209 (health quarantine); *Kroplin v. Truax,* 119 Ohio St. 610, 165 N.E. 498 (summary destruction of tubercular cattle). On the other hand, in the case of most routine area inspections, there is no compelling urgency to inspect at a particular time or on a particular day. Moreover, most citizens allow inspections of their property without a warrant. Thus, as a practical matter and in light of the Fourth Amendment's requirement that a warrant specify the property to be searched, it seems likely that warrants should normally be sought only after entry is refused unless there has been a citizen complaint or there is other satisfactory reason for securing immediate entry. Similarly, the requirement of a warrant procedure does not suggest any change in what seems to be the prevailing local policy, in most situations, of authorizing entry, but not entry by force, to inspect.

387 U.S. at 539-40. In the circumstances presented, the Court noted "there was no

emergency demanding immediate access" and, therefore, the resident who refused entry

without a warrant "had a constitutional right to insist that the inspectors obtain a warrant to

search the premises." *Id.* at 540.

In *Michigan v. Tyler,* 436 U.S. 499 (1978), the Court considered the Fourth

Amendment warrant requirement in the context of various officials' responses to a fire and

entry onto the fire-damaged property in its aftermath. At the outset, the Court noted that

decisions of this Court firmly establish that the Fourth Amendment extends beyond the paradigmatic entry into a private dwelling by a law enforcement officer in search of the fruits or instrumentalities of crime. As this Court stated in *Camara v. Municipal Court,* 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930, the "basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." The officials may be health, fire, or building inspectors. Their purpose

may be to locate and abate a suspected public nuisance, or simply to perform a routine periodic inspection. The privacy that is invaded may be sheltered by the walls of a warehouse or other commercial establishment not open to the public. *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943, *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 311–313, 98 S.Ct. 1816, 1819–1821, 56 L.Ed.2d 305. These deviations from the typical police search are thus clearly within the protection of the Fourth Amendment.

436 U.S. at 504-05. *Tyler* concluded that "[a]s a general matter, . . . entries to investigate the cause of a fire must adhere to the warrant procedures of the Fourth Amendment." 436 U.S. at 508. The Court then noted that "[s]ince all the entries in this case were 'without proper consent' and were not 'authorized by a valid search warrant,' each one is illegal unless it falls within one of the 'certain carefully defined classes of cases' for which warrants are not mandatory." *Tyler,* 436 U.S. at 508-09 (quoting *Camara,* 387 U.S. at 528–529).

The Court then considered recognized situations where warrantless entry may be legal including where there is a compelling need for action by criminal law enforcement and no time to secure a warrant, 436 U.S. at 509 (citing *Warden v. Hayden,* 387 U.S. 294 (1967)), and, in the regulatory field, where prompt inspection is needed in an emergency situation, *id.* (citing *Camara,* 387 U.S. at 539). After concluding that a "burning building clearly presents an exigency of sufficient proportions to render a warrantless entry reasonable," *id.,* the Court disagreed with the proposition that "the exigency justifying a warrantless entry to fight a fire ends, and the need to get a warrant begins, with the dousing of the last flame," *id.* at 510 (citation omitted). The Court found this view of the firefighting function to be "unrealistically narrow" in that

[f]ire officials are charged not only with extinguishing fires, but with finding their causes. Prompt determination of the fire's origin may be necessary to prevent its recurrence, as through the detection of continuing dangers such as faulty wiring or a defective furnace. Immediate investigation may also be necessary to preserve evidence from intentional or accidental destruction. And, of course, the sooner the officials complete their duties, the less will be their subsequent interference with the privacy and the recovery efforts of the victims. For these reasons, officials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished.

*Id.*[1] The Court summarized its holding as follows:

we hold that an entry to fight a fire requires no warrant, and that once in the building, officials may remain there for a reasonable time to investigate the cause of the blaze. Thereafter, additional entries to investigate the cause of the fire must be made pursuant to the warrant procedures governing administrative searches.

Id. at 511 (citations omitted).[2]

---

[1] The Court noted that "reasonableness" in this context is a contextual determination:

The circumstances of particular fires and the role of firemen and investigating officials will vary widely. A fire in a single-family dwelling that clearly is extinguished at some identifiable time presents fewer complexities than those likely to attend a fire that spreads through a large apartment complex or that engulfs numerous buildings. In the latter situations, it may be necessary for officials—pursuing their duty both to extinguish the fire and to ascertain its origin—to remain on the scene for an extended period of time repeatedly entering or re-entering the building or buildings, or portions thereof. In determining what constitutes a "reasonable time to investigate," appropriate recognition must be given to the exigencies that confront officials serving under these conditions, as well as to individuals' reasonable expectations of privacy.

436 U.S. at 510 n.6.

[2] The Court considered the argument that the Michigan Supreme Court was correct in holding that the departure by the fire officials from the fire scene at 4 a. m. ended any authority they might have had to conduct a warrantless search and their re-entry four hours after their departure required a warrant. The Court concluded

on the facts of this case, we do not believe that a warrant was necessary for the early morning re-entries on January 22. As the fire was being extinguished, Chief See and his

In *Michigan v. Clifford*, 464 U.S. 287 (1984), the Court considered whether post-fire

warrantless searches were justified where all fire officials and police had left the premises

over six hours before the fire investigator began his investigation into the cause of the fire.

*Id.* at 289-90. After determining that the fire had originated in the basement, the investigator

searched the remainder of the house. *Id.* at 291. *Clifford* noted that "[i]n its petition for

certiorari, the State does not challenge the state court's finding that there were no exigent

circumstances justifying the search of the Clifford home. Instead, it asks us to exempt from

the warrant requirement all administrative investigations into the cause and origin of a fire."

*Id.* In the circumstances of the case, the Court declined to do so. *Id.*

The Court reaffirmed its position that administrative searches generally require

warrants:

> [e]xcept in certain carefully defined classes of cases, the nonconsensual entry
> and search of property is governed by the warrant requirement of the Fourth
> and Fourteenth Amendments. The constitutionality of warrantless and
> nonconsensual entries onto fire-damaged premises, therefore, normally turns
> on several factors: whether there are legitimate privacy interests in the fire-
> damaged property that are protected by the Fourth Amendment; whether
> exigent circumstances justify the government intrusion regardless of any

---

assistants began their investigation, but visibility was severely hindered by darkness, steam,
and smoke. Thus they departed at 4 a. m. and returned shortly after daylight to continue
their investigation. Little purpose would have been served by their remaining in the building,
except to remove any doubt about the legality of the warrantless search and seizure later
that same morning. Under these circumstances, we find that the morning entries were no
more than an actual continuation of the first, and the lack of a warrant thus did not invalidate
the resulting seizure of evidence.

436 U.S. at 510–11.

reasonable expectations of privacy; and, whether the object of the search is to determine the cause of the fire or to gather evidence of criminal activity.

*Clifford*, 464 U.S. at 291-92. The Court reiterated its holding in *Tyler* that fire officials "need no warrant to *remain* for 'a reasonable time to investigate the cause of the blaze after it has been extinguished.'" *Id.* at 293 (quoting *Tyler*, 436 U.S. at 510).[3] *Clifford* added that where "reasonable expectations of privacy remain in the fire-damaged property, additional investigations begun after the fire has been extinguished and fire and police officials have left the scene, generally must be made pursuant to a warrant or the identification of some new exigency." *Id.* Regarding the existence of exigent circumstances, the Court explained that

> [t]he aftermath of a fire often presents exigencies that will not tolerate the delay necessary to obtain a warrant or to secure the owner's consent to inspect fire-damaged premises. Because determining the cause and origin of a fire serves a compelling public interest, the warrant requirement does not apply in such cases.

---

[3] The Court noted the following:

> We do not suggest that firemen fighting a fire normally remain within a building. The circumstances, of course, vary. In many situations actual entry may be too hazardous until the fire has been wholly extinguished, and even then the danger of collapsing walls may exist. Thus, the effort to ascertain the cause of a fire may extend over a period of time with entry and re-entry. The critical inquiry is whether reasonable expectations of privacy exist in the fire-damaged premises at a particular time, and if so, whether exigencies justify the re-entries.

464 U.S. at 293 n.3.

*Id.* Relatedly, the Court noted that "the object of the search is important even if exigent circumstances exist. Circumstances that justify a warrantless search for the cause of a fire may not justify a search" for another purpose. *Id.* at 294.

Considering the first prong of the qualified immunity analysis within this legal framework, whether Defendant Panzarella's actions violated Plaintiff's Fourth Amendment rights hinges on whether her search was conducted pursuant to an exception to the warrant requirement. It is typically the defendant's burden to show that the consent or exigency exception to the warrant requirement applies. *Chinneah v. East Pennsboro Township*, 761 F. App'x 112, 117 (3d Cir. 2019) (not precedential) (citing *United States v. Price*, 558 F.3d 270, 177 (3d Cir. 2009); *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996)). Here, only the exigency exception is at issue. (*See* Doc. 13 at 21.) Defendants argue that Defendant Panzarella's search

> occurred while fire officials were still on the scene and within several minutes of the fire being extinguished. The exigency created by a fire did not end when "the last flame is doused." In the context of a post-fire investigation, officials are permitted by the Fourth Amendment to remain on scene for a reasonable time to investigate the cause and source of a fire, to determine whether code violations occurred, and to ensure the danger has ended and will not return. The search by Ms. Panzarella was not conducted the next day, several days later, or even hours after police and fire officials left the scene. Rather, fire officials were still at the Property.
>
> Ms. Panzarella performed the same duties as the fire marshal in [*United States v. Fortino*, Crim. No. 85-467, 1986 WL 1093 (E. D. Pa. Jan. 17, 1986)], and as the police who were called to the scene in [*United States v. Clark*, 617 F. Supp. 693 (1985), and [*Horton v. Notorfrancesco*, Civ. A. No. 88-1962, 1990 WL 112087 (E.D. Pa. Aug. 1, 1990)]. In fact, the search discovered fire hazards in the basement as detailed in the letter to Plaintiff dated February 17, 2016.

See Letter of February 17, 2016 (Doc. No. 1-2) ("The Building Code Official has discovered that this building has numerous electrical violations and has presented an imminent danger to the occupants of the structure, is a hazard and is unfit for human habitation..."). As a code enforcement official, Ms. Panzarella took the necessary steps to investigate the Property for violations and, most significantly, to ensure the safety of the residents and citizens while fire officials were still on the scene. As such the alleged warrantless search was reasonable under the Fourth Amendment, and Plaintiff's "illegal" search claim fails as a matter of law.

(Doc. 13 at 27-28.)

While many of Defendants' allegations are accurate, their conclusions are not supported by facts of record. Importantly, no allegations in the Complaint nor any statements in documents attached to it show that Defendant Panzarella and Mr. Faust were charged with determining the cause of the blaze which is the central consideration in the *Tyler* and *Clifford* exigency analyses. Likewise, neither the Complaint nor documents attached show that the cause of the blaze was yet to be determined when Defendant Panzarella and Mr. Faust were called to, or arrived at, the scene. If Defendant Panzarella and Mr. Faust were not involved in the determination of the cause of the blaze, their warrantless search would not be directly authorized by *Tyler* or *Clifford*. If the warrantless search was not authorized by the exigency of the need, while fire officials remained on the scene, to determine the cause of the blaze, then the warrantless code inspection would only pass constitutional muster pursuant to *Camara*, 387 U.S. at 539-40, if it was necessitated by an independent emergency situation. On the current record, the Court cannot determine what, if any, emergency was presented, or was perceived to be presented, by the situation

observed by fire officials when they entered the basement of the premises and decided to call the code inspectors.[4] Nor do the Complaint and attached exhibits show what information the fire officials provided to the code inspectors regarding the situation they had observed in the basement. These are critical matters which cannot be ascertained from what the code inspectors discovered *after* they entered the premises, i.e, the reasonableness of the decision to conduct the search without a warrant must be determined based on the facts existing *at the time* the decision was made.

Defendants' citation to *Fortino*, *Clark*, and *Horton* are unavailing in that Defendants do not point to evidence of record which shows that the code inspectors here functioned as fire marshals, that they had responsibilities akin to the fire marshal in *Fortino* whose job was to "investigate all fires in the community to determine whether there has been an arson, to investigate code violations, and to determine whether the lack of certain codes were responsible in whole or in part for the fire," 1986 WL 1093, at *1, or that the fire marshal in *Fortino* was functioning as a code inspector when he instituted the warrantless search at issue, *id.* at 1-3. Further, the cited cases all involved the observation of evidence suggestive of drug manufacturing operations in which chemicals were often unstable and were known to pose a significant risk of explosion. *Horton*, 1990 WL 112087, at *1-2;

_____

4 Though Plaintiff's Complaint avers that Defendant Panzarella "came to 10-12 East Oak Street" due to the responses of the West Hazleton Fire Department (Doc. 1 ¶ 18), Plaintiff does not dispute Defendants' assertion that she arrived at the property "*in response to* the fire department" (Doc. 13 at 13 (emphasis added), that fire officials *called* her to the scene (*id.* at 26), and that firefighters first accessed the basement (*id.* at 30).

18

*Fortino*, 1986 WL 1093, at *2; *Clark*, 617 F. Supp. at 695. Defendants make no argument

that the circumstances here presented a similar situation. Finally, Defendants' argument

that the search discovered fire hazards in the basement which "presented an imminent

danger to the occupants of the structure" and rendered it "unfit for human habitation" (Doc.

13 at 27-28 (internal quotation omitted)), shows what was found *after* the inspectors' entry,

not what was known to them or perceived by them *at the time* of the entry which is the

relevant question here.[5]

 The foregoing analysis indicates that Defendants have not shown that Defendant

Panzarella did not violate Plaintiff's Fourth Amendment rights when she conducted a code

inspection in the immediate aftermath of the fire. Thus, the Court will examine whether

Defendant Panzarella is entitled to qualified immunity under the second prong of the inquiry,

i.e, even if Defendant Panzarella violated Plaintiff's Fourth Amendment right not to be

subject to an unreasonable search, would Plaintiff's claim fail because the right at issue was

not clearly established.

 Framed in the specific context of the case as is required for the second prong of the

qualified immunity inquiry, *see Kane*, 902 F.3d at 194 citation, the right at issue is an

individual's right not to be subject to a warrantless search of his property by code inspectors

---

[5] Though not specifically relied upon to demonstrate the propriety of Defendant Panzarella's actions,
Defendants cite *Barshinger v. Buffington*, No. Civ. A. 1:03-CV-0506, 2004 WL 3607974 (M.D. Pa. June 10,
2004), where the district court found that the decision of municipal officials to enter a property without a
warrant was reasonable based on their perception of an emergency situation where the property had no
rear wall, the second floor was collapsing, several cars were stored inside the building, and gasoline cans
littered the building and premises, *id.* at *1. (*See* Doc. 13 at 27-28.)

in the immediate aftermath of a fire where fire officials called the code inspectors to the scene. For the reasons discussed below, the Court concludes that Defendants have not satisfied their burden of showing that this right was not clearly established.

The review of Supreme Court precedent set out above shows, at the time of the search at issue, it was clearly established that an administrative search such as an inspection for a reported code violation was subject to the Fourth Amendment warrant requirement unless prompt inspection/immediate access to the premises was necessary because of an emergency situation. *Camara*, 387 U.S. at 539, 540. The review also shows that it was clearly established that no warrant was needed to fight the fire or for fire officials to remain on the premises for a reasonable time after the fire was extinguished to investigate the cause of the blaze. *Tyler*, 436 U.S. at 511; *Clifford*, 464 U.S at 293. It was also clearly established that, after fire officials left the premises, additional entries to investigate the cause of the fire had to be made pursuant to the warrant procedures governing administrative searches. *Tyler*, 436 U.S. 511.

Thus, a reasonable official would have known of the need to obtain a warrant as a prerequisite to a code inspection in the aftermath of a fire unless the need for the code inspection was due to an "emergency situation," *Camara*, 387 U.S. at 539-40, or the code inspectors were charged with determining the cause of the fire, *Tyler*, 436 U.S. at 511; *Clifford*, 464 U.S at 293.

Defendants provide little support for their argument that Defendant Panzarella is

entitled to qualified immunity under the second prong of the analysis. (Doc. 13 at 28-30.)

They do not "frame the right in light of the specific context of the case." *Kane*, 902 F.3d at

194. After citing principles applicable to the doctrine of qualified immunity generally, they

state that

> [t]he court should ask whether the official's actions were reasonable in light of
> the clearly established law and the information known to her, not whether
> another reasonable, or more reasonable, interpretation of the events can be
> constructed after the fact. *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir.
> 1998) (citing *Hunter*, 502 U.S. at 228 (1991)). In the instant case, the alleged
> actions of Ms. Panzarella were not so egregious that it could be said that
> "every" reasonable official would have known it was constitutionally prohibited.

(Doc. 13 at 29-30.) In its entirety, the rest of their argument goes as follows:

> Searches of property in connection with fires and their aftermath are justified
> by the need to investigate the cause and source of the fire, to determine
> whether code violations occurred, and to ensure public safety. Where such
> searches were found to be unreasonable, they occurred long after fire and
> police personnel left the scene and after the property owner acted to ensure
> their privacy interests. Here, neither of these scenarios occurred. There were
> two fires on the same morning of a five-unit apartment building. Police and fire
> officials responded to the Property. The alleged search occurred while the
> firefighters were still on scene and within minutes of the fire being extinguished
> and before Plaintiff took any action whatsoever to ensure the safety of the
> residents. The basement was opened and accessed by firefighters. The search
> revealed electrical violations so significant that the building was determined a
> fire and safety hazard, immediately condemned as a threat to human life, and
> the tenants removed. Based on the above, at a minimum, Ms. Panzarella
> should be afforded qualified immunity and Plaintiff's claims against her
> dismissed with prejudice.

(Doc. 13 at 30.) This string of conclusory assertions does not satisfy Defendants' burden of

showing entitlement to qualified immunity. Notably, no authority has established that

21

warrantless "[s]earches of property in connection with fires and their aftermath are justified by the need to . . . determine whether code violations occurred, and to ensure public safety" (id.) Rather, it has been the existence of an emergency which warrants inspection without a warrant in some circumstances. See Camara, 387 U.S. at 539-40. An inspection to "determine whether code violations occurred" (id.), without more, does not categorically constitute an emergency nor does a general concern about public safety.

In their reply brief, Defendants state that "[t]he Supreme Court and District Courts of this Circuit have repeatedly found post-fire searches to determine the cause and source of the fire and to ensure public safety to be justified under these circumstances. The court in Fortino explicitly found a post-fire search reasonable when motivated, in part, by an official's investigation of code violations and whether they contributed to the fire." (Doc. 17 at 17.) Defendants' cursory reference to Fortino, 1986 WL 1093, does nothing to advance their qualified immunity defense in that Fortino is distinguishable in many respects, including that the initial warrantless searches were conducted by the fire marshal whose numerous duties included "to inspect, investigate, and determine the origin of the fire, as well as to examine the premises for fire code violations," 1986 WL 1093, at *3, and a warrant was obtained by police department personnel who conducted a subsequent search of a suspected "clandestine drug manufacturing center" in the basement of the structure which the fire marshal knew involved chemicals which were "often unstable and posed a significant risk of explosion," id. at *2. See supra p. 18.

As discussed regarding the first prong, Defendants have not shown that the facts of record establish that an emergency existed or was reasonably perceived to exist when Defendant Panzarella began her inspection of Plaintiff's basement. They have not shown that Plaintiff's right not to be subject to a warrantless search of his property by code inspectors in the immediate aftermath of a fire where fire officials called the code inspectors to the scene was not clearly established. In answer to the dispositive question posed by Defendants--"'whether [Defendant Panzarella's] actions were reasonable in light of the clearly established law and the information known to her'" (Doc. 13 at 29-30 (citing *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)))—the Court concludes a definitive answer cannot be provided on the current record due to the absence of facts critical to the exigency determination discussed above. Thus, Defendants have not shown entitlement to qualified immunity and the Court rejects Defendants' assertion that Plaintiff's Fourth Amendment claim should be dismissed on this basis.

The foregoing analysis also shows that Defendants' independent argument that Plaintiff's Fourth Amendment illegal search claim fails because the search was conducted pursuant to an emergency (Doc. 13 at 21-28) is not supported by the record and does not provide a basis for dismissal of the claim.

Nothing in the Court's conclusions should be construed to assess the merits of Plaintiff's Fourth Amendment claim or Defendant Panzarella's ultimate entitlement to qualified immunity. Rather, the Court's determinations are based on the facts properly

considered on a motion to dismiss, the necessity of drawing inferences in favor of Plaintiff, see, e.g., McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009), and the finding that significant questions essential to the matters at issue remain unanswered.[6]

This conclusion differs from that recommended in the R&R. The principle reason for the different outcome is that the R&R found the facts alleged by Plaintiff "strongly suggest that this code inspection falls within the fire emergency exigency exception crafted by the Supreme Court in Tyler and Clifford" (Doc. 24 at 19) whereas the Court finds Defendant has not shown that the facts alleged in the Complaint and attached exhibits support such a conclusion. See supra pp. 16-23. More specifically, the Magistrate Judge made findings not readily supported by the record or relevant precedent. For example, the R&R states that

> [t]he inspection was plainly supported by probable cause, in that firemen had twice responded to fire calls related to a fire of undetermined origin on the premises, and the scope of the search was reasonable given the fact that the fire arose in an electrical appliance and fire fighters were examining the electrical power source for that appliance. Further, the search was conducted contemporaneously with the presence of firemen on the scene, shortly after the fire was quelled, and only after firemen searching for any electric source of ignition had uncovered what appeared to be health and safety violations.

---

[6] The Court notes that the main cases relied upon by Defendants were not decided on a motion to dismiss. Horton, 1990 WL 112087, and Clark, 617 F. Supp. 693, were decided in the context of post-trial proceedings; Fortino,1986 WL 1093, was decided on a motion to suppress evidence; Barshinger, 2004 WL 3607974, was decided on summary judgment; Clifford, 464U.S. 287, and Tyler, 436 U.S. 499, were appeals from criminal convictions; and Camara's context was appeal from a pre-trial state court writ prohibiting prosecution, 387 U.S. 523.

(Doc. 24 at 19-20).) The problem with this analysis is that it does not make a direct connection between the recognized exigencies in *Tyler* and *Clifford* clearly applicable to fire officials here but, without more, not transferable to the code inspectors called to the scene for the reasons discussed under the first prong of the qualified immunity analysis. *See supra* pp. 17-19. Further, the correlation of "probable cause" and exigency is not consistent with the *Clifford* probable cause analysis relied upon (Doc. 24 at 19 (citing *Clifford*, 464 U.S. at 294)) in that the "probable cause" showing referenced in the Magistrate Judge's analysis was set out in *Clifford's* consideration of what type of warrant was needed after the exigencies presented in the immediate aftermath of a fire had passed and the Court's explanation of the showing needed to obtain an administrative warrant. 464 U.S. at 294.

The Magistrate Judge also found support for the exigency of the situation in a West Hazleton Fire Department Report ("Report"), stating "when this fire report—a document of undisputed authenticity that is relied upon by all parties—is read in its entirety, as a factual matter it supports the warrantless entry into this structure." (Doc. 24 at 21.) The Narrative of the Report provides details of on-scene events,[7] but reliance on it to support Defendant

---

[7] The Narrative portion of the Report states the following:

Dispatched by Luzerne County 911 Center to 10 E. Oak E. Oak Street West Hazleton AP dispatched 20 Minutes previous to same location see previous incident.

While arrival on scene found 1st floor apartment . . . filled with heavy smoke coming from the kitchen area evacuation of residence evident.

Panzarella's warrantless entry is not appropriate at this stage of the proceedings. Although recognizing the Report to be an undisputedly authentic document is acceptable (*see* Doc. 24 at 20 n.2 (citing *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Berk v. Ascott Investment Corp.*, 759 F. Supp. 245, 249 (E.D. Pa. 1991); *Watterson v. Page*, 987 F.2d 1, 4 (1st Cir. 1993))), making assumptions based on the information contained in the Report or assuming the factual accuracy of information provided is a different matter--at the motion to dismiss stage, the court may take judicial notice only of the existence of the report, not of the truth of the facts asserted therein. *See Chinneah*, 761 F. App's at 117 (citing *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 93d Cir. 2004)); *see also Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). Finally, even if the Report were

---

Engine crew discovered oil smoking from stove top and back door open. Outside of door in the area of the patio/back door on top of a case of coors light was burnt papers with heavy back charing [sic].
Fire was out prior to crew arrival checking for extension and during overhaul found a short in electric appliance that when touching the top of stove large amount of electrical discharge / Sparks was noted by interior crews.

Appliance was unplugged and removed as ladder crew was checking for extension in the basement, evident there were multiple code violations and a direct call [w]as placed for code enforcement to respond. Upon arrival of code enforcement and commercial code enforcement the structure was determined to be inhabitable for human life, request for electric, water and gas to respond to the scene and lock out services because of violations found by Code officers.

Red Cross was called to the scene to assist displaced residents. Code Enforcement took over the scene and all Fire Units were released.

(Doc. 17-1 at 2.)

properly considered, it does not answer questions central to the constitutional inquiry outlined above. The Report does not say when the cause of the fire was determined, if that cause had to do with more than "a short in the electrical appliance," or precisely who made the determination as to cause. *See supra* p. 25 n.7. The Report does not say whether the "evident code violations" presented an emergency situation or what information was provided to Defendant Panzarella and Mr. Faust before they conducted their warrantless inspection. *Id.* While events following the inspection, i.e., finding the property uninhabitable and requesting that utilities be disconnected, *id.*, may be consistent with a finding of exigent circumstances independent of the cause of the fire, any inferences drawn from after-the-fact findings are inappropriate at the pleading stage.

In sum, on the current record, the Court cannot conclude that Defendant Panzarella is entitled to qualified immunity or that Plaintiff has failed to state a Fourth Amendment claim based on the search she conducted. Details developed through discovery may well show that Defendant Panzarella did not violate a constitutional right and/or that the constitutional right at issue was not clearly established. However, neither the R&R nor Defendants' arguments show that Defendants' motion regarding Defendant Panzarella should be granted on the current record.

## B. Exigent Circumstances

Plaintiff alleges that the Magistrate Judge's determination that the inspection at issue falls within the fire emergency exigency exception to the warrant requirement was in error

because, in so finding, the Magistrate Judge discounted several of the allegations in

Plaintiff's Complaint. (Doc. 25 at 8.) For the reasons discussed in the preceding section of

this Memorandum Opinion, the Court has determined that Defendants have not shown that

the facts of record establish that Defendant Panzarella's inspection falls within an

emergency exception to the Fourth Amendment warrant requirement. Therefore, further

discussion of Plaintiff's objections related to exigent circumstances is not necessary.

## C. Municipal Liability

Plaintiff lodges several objections to the Magistrate Judge's determination that his

municipal liability claims based on *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978),

fail. (Doc. 25 at 10.) His Complaint identifies two bases for *Monell* liability: the policy of the

Borough of West Hazleton that code officials may conduct a search of property at any time if

requested by police or fire officials if the police or fire officials deem that a hazard exists

(Doc. 1 ¶ 69); and a failure to train based on the beliefs of Defendant Panzarella and Mr.

Faust regarding their authority to conduct warrantless searches (*id.* ¶ 74). As set out in the

R&R,

> under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a
> governmental entity may be sued under 42 U.S.C. § 1983 in the limited
> circumstance where the enforcement of an official governmental policy inflicts
> a constitutional violation. . . . [P]laintiffs who seek to impose liability on local
> governments under § 1983 must prove that "action pursuant to official
> municipal policy" caused the injury complained of. *Id.* In addition to a *Monell*
> claim based on a municipal policy, a municipality may also be liable under a
> failure-to-train theory. When the allegation is one of a failure to train officers,
> there will be liability "only when that failure amounts to deliberate indifference

to the rights of persons with whom the [officers] come into contact." *City of Canton v. Harris*, 489 U.S. 379, 388 (1989).

(Doc. 24 at 25.)

The Magistrate Judge first concluded that Plaintiff's municipal claims fail based on the determination that Defendant Panzarella was entitled to qualified immunity and the Third Circuit's holding that, "'[a]bsent an underlying constitutional violation by an agent of the municipality . . . the municipality itself may not be held liable under § 1983.'" (Doc. 24 at 28 (quoting *Mills v. City of Harrisburg*, 350 F. App'x 770, 773 n.2 (3d Cir. 2009) (citing *Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 124 (3d Cir. 2003)). Because the Court has determined that Defendants have not satisfied their burden of showing that Plaintiff's Fourth Amendment claim against Defendant Panzarella must be dismissed, the Court rejects the derivative dismissal of Plaintiff's *Monell* claims.

The Magistrate Judge also concluded that Plantiff's municipal claims fail as a matter of pleading under *Monell*. (Doc. 24 at 28.)

> Cannarozzo's claim that the Borough had an "enunciated policy" of allowing code enforcement officials to search properties in violation of the constitution is presented in a conclusory fashion without any supporting wellpleaded facts. Additionally, Cannarozzo's failure-to-train claim under *Monell* also fails. He asserts that the Borough failed to train Panzarella because Panzarella believed she had a right to go in and inspect his building without a warrant, thereby violating his constitutional rights. However, as we have acknowledged, the law often allows for searches pursuant to an investigation of a fire without a warrant when there are exigent circumstances present. Moreover, Cannarozzo asserts no factual allegations to suggest that, if Panzarella's actions were unlawful, the Borough was aware of prior similar incidents or that the Borough had knowledge of and acquiesced in Panzarella's actions.

(*Id.*)

Although Magistrate Judge Carlson extensively cites *Tucker v. Petruzzi*, No. 3:17-CV-1848, 2018 WL 3623766, at *7 (M.D. Pa. June 27, 2018), as a basis for the finding that Plaintiff has failed to state a municipal claim (Doc. 24 at 26-27, 28-29), the Court finds the allegations in Plaintiff's Complaint regarding municipal liability to be more developed than those in *Tucker* where the municipal claims were said to be made in a "talismanic fashion," 2018 WL 3623766, at *7. Here, Plaintiff alleges a specific policy of the Borough of West Hazleton: "code officials may conduct a search of property at any time if requested by police or fire officials if the police or fire officials deem that a hazard exists." (Doc. 1 ¶ 69.) If shown to be accurate, the policy's consistency with constitutional considerations set out in the authority discussed above depends how "hazard" is defined, and the policy could potentially be related to Defendant Panzarella's challenged conduct.

Plaintiff also alleges Mr. Faust testified that

under the Building Code in the State of Pennsylvania, Borough officials have the right to inspect and go into a building as long as either the fire company of police department is there and if we believe that there are violations or life threatening problems that would cause a fire or can be hazardous to the property or anybody living in the property.

(*Id.* ¶ 72.) If accurate, this statement shows an understanding on the part of Mr. Faust of a right to inspect without a warrant which is arguably broader than what the law allows under the Fourth Amendment, again depending on what is meant by "hazardous" and other key terms. Similarly, if Mr. Faust testified that "Borough officials have the right to go and look at

a building with the accompaniment of a fire department or the police department if it is declared a hazard exists" (id. ¶ 73), his testimony could show an overly inclusive understanding of exigency depending on his definition of "hazard." Finally, Plaintiff's correlation between inaccurate assessments of the warrant requirement on the part of Defendant Panzarella and Mr. Faust and their training as code officials for the Borough of West Hazleton (id. ¶ 74) presents more than a hollow recitation of a right to relief when considered in relation to Mr. Faust's alleged testimony (id. ¶¶ 72, 73). Thus, while the R&R properly identifies the hurdles to be crossed to establish a claim for municipal liability (Doc. 24 at 25-29), the Court concludes Plaintiff has pled sufficient facts to survive Defendants' motion to dismiss and proceed with discovery related to his municipal liability claims.

## V. CONCLUSION

For the reasons discussed above, the Report and Recommendation (Doc. 24) is not adopted and the Motion of Defendants, Borough of West Hazleton and Diane Panzarella, to Dismiss Plaintiff's Complaint (Doc. 13) is denied. An appropriate Order is filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge